**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION**

| | |
|---|---|
| **JOSOLYN NELSON and DEBORAH NELSON, on behalf of themselves and a class of similarly situated persons,** | )<br>)<br>)<br>)<br>) **Civil Action No.:** |
| **Plaintiffs** | ) |
| **v.** | )<br>) |
| **EQUINOR ENERGY LP** | )<br>) |
| **Defendant.** | ) |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Josolyn Nelson and Deborah Nelson (collectively, the "Nelsons"), on behalf of themselves and the Class defined below, for their Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Equinor Energy LP ("Equinor") allege:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: (a) the Nelsons have brought this case as a class action; (b) the Class proposed by the Nelsons exceeds 100 members; (c) the proposed Class contains at least one Class member who is a citizen of a state different from the states where Equinor is deemed to be a citizen; and (d) the amount in controversy on the claims of the proposed Class members exceeds the sum of $5,000,000, exclusive of interest and costs.

2. This Court has personal jurisdiction over Equinor because a substantial portion of the acts and conduct of Equinor giving rise to the claims asserted in this class action occurred in the State of North Dakota.

3. Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because a substantial part of Equinor's conduct giving rise to the claims alleged in this class action occurred in this judicial district.

## PARTIES

4. Plaintiff Josolyn Nelson is a resident and citizen of the State of Texas.

5. Plaintiff Deborah Nelson is a resident and citizen of the State of Texas.

6. Defendant Equinor is a limited partnership organized under the laws of the State of Delaware, and its principal place of business is located at 6300 Bridge Point Parkway, Building 2 Suite 100, Austin, Texas 78730. Equinor is formerly known as Statoil Oil & Gas LP, and officially changed its name from Statoil Oil & Gas LP to Equinor on May 15, 2018.

## CLASS DEFINITION

7. The Nelsons bring this class action on behalf of themselves and a Class of similarly situated persons consisting of:

> All persons to whom Equinor has paid royalties on oil produced from wells located in the State of North Dakota since July 1, 2010, pursuant to leases or overriding royalty agreements which require Equinor "[t]o deliver to the credit of Lessor, free of cost, in the pipeline to which Lessee may connect wells on said land, the equal [a specified percentage] of all oil produced and saved from the leased premises."
>
> The Class excludes: (a) the United States; and (b) Equinor and its affiliated entities, and their respective employees, officers and directors.

## FACTUAL ALLEGATIONS

8. On May 11, 2009, Alice G. Nelson, Trustee of the Russell J. and Alice G. Nelson Revocable Living Trust Agreement dated July 13, 1998, as lessor, entered into an oil and gas lease with Diamond Resources, Inc., as lessee, pertaining to leased premises located in the State of North

Dakota ("the 2009 Lease"). Josolyn Nelson acquired her lessor's interest in the 2009 Lease via Mineral Deed recorded in Williams County, North Dakota at Document #706664, dated March 10, 2010, and recorded on March 3, 2011, and has owned such interest under the 2009 Lease at all times since March 10, 2010. Deborah Nelson acquired her lessor's interest in the 2009 Lease via Mineral Deed recorded in Williams County, North Dakota at Document #706663, dated March 10, 2010, and recorded on March 3, 2011, and has owned such interest under the 2009 Lease at all times since March 10, 2010. On August 1, 2019, Equinor acquired the lessee's interests under the 2009 Lease, and Equinor has continued to own the lessee's interests under the 2009 Lease at all times since August 1, 2019.

9. The 2009 Lease contains the following oil royalty provision, under which the lessee agrees "[t]o deliver to the credit of the lessor, free of cost, in the pipeline to which lessee may connect wells on said land, the equal one-sixth (1/6th) part of all oil produced and saved from the leased premises."

10. At various times since Equinor acquired its lessee's interests under the 2009 Lease, Equinor has produced and sold to its affiliates, that Equinor controls, oil from wells subject to the 2009 Lease, and has paid royalties to the Nelsons on such oil production.

11. Upon information and belief, Equinor:

    a. Owns stock in the affiliated entities;

    b. Shares common officers and/or directors with the affiliated entities;

    c. Controls the financing of its affiliated entities;

    d. Controls the operations and decisions of its affiliated entities; and

    e. Primarily conducts business with its affiliated entities.

12. Equinor holds itself out to the public as a "broad based" energy company which ensures a "one company approach to achieve [a] sustainable global business for Equinor." https://www.equinor.com/en/about-us/organisation.html.html. In addition, Equinor in its 2019 annual report details its "value chain" of subsidiary, affiliated companies through which Equinor explores for, produces, transports, processes, refines, and markets oil. https://www.equinor.com/en/investors.html#annual-reports.

13. At various times since August 1, 2019, Equinor, in its calculation and payment of royalties to the Nelsons on oil sales subject to the 2009 Lease, has improperly deducted from the sales price of the oil various costs its affiliates charged relating to transporting the oil from the well to a transportation pipeline, related to transporting the oil to a delivery point where the oil has been sold to third parties, or other costs not permitted under the terms of the applicable royalty provision. Equinor does not state these deductions in the Nelsons' royalty statements, but rather takes unstated deductions by reporting on the Nelsons' royalty statements the difference between the price Equinor actually receives and the deductions Equinor takes. The sales price Equinor reports to the Nelsons is not an arms-length sale, and is not based upon the price or value of the oil in the pipeline to which the oil produced by Equinor is first delivered. Accordingly, the price per barrel which Equinor uses in its calculation and payment of royalty to the Nelsons includes transportation and other deductions. Regardless of whether Equinor sells oil to its affiliates or to third parties in arms-length transactions, Equinor has the duty to pay on the price it receives at the pipeline.

14. Equinor's deduction of the above-referenced costs in its calculation of royalties paid to the Nelsons on oil sales is not permitted under the oil royalty provision referenced in Paragraph 9 of this Complaint, and Equinor has materially breached its contractual obligations to the Nelsons

under the 2009 Lease by taking such deductions in its calculation and payment of royalties to the Nelsons.

15. The Nelsons have sustained substantial damages as a result of Equinor's breaches of its contractual obligations to the Nelsons under 2009 Lease.

16. In addition to the Nelsons, each member of the proposed Class has an interest in a lease or overriding royalty agreement which contains the same oil royalty provision that is set forth in the 2009 Lease, and under which Equinor has owned the lessee's interest, or with respect to overriding royalty agreements, has been obligated to pay the royalties to the owner of the overriding royalty interest. Equinor, in its calculation and payment of royalties on oil sales to the members of the Class, has engaged in the same method of royalty accounting which it utilizes to pay royalties to the Nelsons on oil sales, in that Equinor has deducted from the sales price of the oil the various costs referenced in Paragraph 13 of this Complaint at various times since July 1, 2010.

17. Equinor, in deducting the above-referenced costs in its calculation of royalties paid to the Class members on oil sales, has materially breached its contractual obligations to the Class members under the leases and overriding royalty agreements described in the Class definition set forth in Paragraph 7 of this Complaint.

18. As a direct result of Equinor's breach of its contractual obligations to the members of the Class, the royalties owed to the Class members have been substantially underpaid, and the Class members have sustained substantial damages.

## CLASS ACTION ALLEGATIONS

19. The proposed Class, which consists of more than one hundred persons, is so numerous that joinder of all Class members in this litigation is impracticable.

20. There are questions of law or fact common to the claims of the Class members against Equinor, including, but not limited to: (1) whether Equinor's deduction of the above-referenced costs in its calculation of royalties paid to the Class members is a material breach of Equinor's obligations to the Class members under the leases and overriding royalty agreements at issue; and (2) the proper method for calculating the royalty underpayments resulting from Equinor's improper deduction of the above-referenced costs from the sales price of the oil in its payment of royalties to the Class members.

21. The claims of the Nelsons against Equinor are typical of the claims of the Class members against Equinor.

22. The Nelsons will fairly and adequately protect the interests of the Class members regarding their claims against Equinor.

23. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the Class.

24. A class action is superior to other available methods for fairly adjudicating this controversy.

### FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT

25. The allegations contained in Paragraphs 1 through 24, inclusive, are restated and incorporated by reference herein.

26. Equinor has breached its obligations to the Nelsons and the Class members under the leases and overriding royalty agreements at issue, in the manner described above.

27. The Nelsons and the Class members have sustained substantial damages as a direct result of Equinor's breaches of its royalty payment obligations to the Nelsons and the Class under the leases and overriding royalty agreements at issue.

28. Pursuant to N.D.C.C. § 47-16-39.1, the Nelsons and the Class members are entitled to recover prejudgment interest on the full amount of each royalty underpayment, at a rate of eighteen percent per annum, calculated from the date of each underpayment through the date of judgment, as well as court costs and attorney's fees.

29. The Nelsons and the Class members are entitled an eighteen percent per annum interest rate pursuant to N.D.C.C. § 47-16-39.1 because Equinor failed to pay oil royalties within 150 days after oil produced under the leases and overriding royalty agreements at issue is marketed, and the Nelsons and the Class members are not seeking to cancel their leases and overriding royalty agreements.

## SECOND CLAIM FOR RELIEF – DECLARATORY JUDGMENT

30. The allegations contained in Paragraphs 1 through 29, inclusive, are restated and incorporated by reference herein.

31. A controversy exists between the Nelsons, the Class, and Equinor regarding the correct method for Equinor's calculation and payment of future royalties on oil sales under the leases and overriding royalty agreements at issue.

32. The Nelsons request that the Court enter a declaratory judgment declaring that Equinor is required to pay future royalties to the Nelsons and the Class members under the leases and overriding royalty agreements at issue without taking the deductions referenced in Paragraph 13 of this Complaint.

## PRAYER FOR RELIEF

The Nelsons pray for the following relief:

1. An Order finding that the claims asserted by the Nelsons on behalf of the defined Class should be certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3), that the Nelsons be

appointed as the Class Representatives for the certified Class, and that the Nelsons' attorneys be appointed as Class Counsel for the certified Class;

2.  A judgment in favor of the Nelsons and the Class members on their claim for Equinor's breaches of the leases and overriding royalty agreements at issue, for the full amount of royalty underpayments, plus applicable prejudgment interest pursuant to N.D.C.C. § 47-16-39.1;

3.  A declaratory judgment declaring the appropriate method for Equinor's calculation of future royalties on oil sales under the leases and overriding royalty agreements at issue, in accordance with the relief prayed for by the Nelsons in Paragraph 32 of this Complaint;

4.  An award of court costs and attorneys' fees; and

5.  For such additional relief as may be just.

## DEMAND FOR JURY TRIAL

6.  Plaintiffs request a jury trial on all matters so triable.

VOGEL LAW FIRM

By: */s/ Joshua A. Swanson*
Joshua A. Swanson, ND Bar No. 06788
R.J. Pathroff, ND Bar No. 07759
218 NP Avenue
Fargo, ND 58102
(701) 237-6983
jswanson@vogellaw.com
rpathroff@vogellaw.com

LAW OFFICES OF GEORGE A. BARTON, P.C.

By: */s/ George A. Barton*
George A. Barton Mo. Bar No. 26249
7227 Metcalf Avenue, Suite 301
Overland Park, KS 66204
(913) 563-6250
gab@georgebartonlaw.com

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS**

9